IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Misc. Case No. 23-00529 |
| | ) |
| Debtor. | ) |
| | ) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' BRIEF IN OPPOSITION TO MOTION OF FTI CAPITAL ADVISORS, LLC TO QUASH SUBPOENA AND FOR RECOVERY OF RELATED FEES AND EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(d)(2)**

COMES NOW the Official Committee of Unsecured Creditors of Tehum Care Services, Inc. (the "Committee") and moves the Court for an Order denying the relief requested in FTI Capital Advisors, LLC's ("FTICA") Motion to Quash Subpoena and for Recovery of Related Fees and Expenses Pursuant to Federal Rule of Civil Procedure 45(d)(1) (the "Motion to Quash").

## I.     Preliminary Statement

No amount of bluster or misdirection can overcome the plain facts relating to the Subpoena. FTICA was engaged for less than three months in 2022 by one of the Corizon entities to provide the Fairness Opinion that formed the basis for the Divisional Merger. As a result, FTICA has highly relevant, responsive documents. FTICA has been attempting to avoid producing these for months, necessitating the Subpoena. FTICA faces minimal burden in production because its engagement was limited in both time and scope. The Subpoena requested documents within an accelerated timeline due to FTICA's obstinacy and the in light of an upcoming hearing, and the Committee explained to FTICA that it would agree to a modified timeline for compliance. In the face of all this, FTICA had a number of options before it within

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

1

the scope of the Federal Rules, including evaluating its burden, proposing a manageable timeline, or asking the Committee to modify or explain the scope outlined in the Subpoena.

FTICA chose none of these. Instead, it has rushed into Court and claimed that because the Subpoena requested an accelerated timeline for production, FTICA should be excused from any obligation to comply and the Committee's counsel should be sanctioned for having the temerity to pursue discovery essential to the claims and proposed releases. FTICA supplements this spurious centerpiece with scattershot arguments equal parts baseless, disingenuous, and ill-defined. It claims the burden for responding would be "enormous" even though it admits it has done nothing to evaluate that burden. It suggests that the Committee should obtain documents from other parties even though it knows the other parties don't have them and has cautioned those parties against producing documents they do have. Finally, it rails about the Committee's accelerated timeline without disclosing that the Committee explained the reasons for requesting it and stated multiple times that it would agree to a modified timeline if FTICA would produce the documents requested.

The DIP Lender is seeking a broad release for the Corizon principals of essentially all claims, and specifically identifies all claims relating to the Divisional Merger. The Committee has an obligation to investigate all potential claims in this case, and to do so with all due speed given the Court and other parties' discussions of a potential global resolution. This discovery is essential to that process, it was properly brought, and FTICA's attempts to oppose it should be dismissed as the naked attempt at obfuscation and obstruction they are. The Court should deny the Motion to Quash and order FTICA to fully respond to the Subpoena, at its own cost, by a date certain to be determined by the Court.

## II.     Factual Background

1.     Tehum Care Services, Inc., the debtor in this bankruptcy proceeding ("Tehum" or the "Debtor"), was formed pursuant to a series of transactions that ultimately resulted in separating the Debtor's predecessor company into two distinct entities (the "Divisional Merger").

2.     As a prerequisite to executing the Divisional Merger, Corizon Health, Inc. ("Corizon") and M2 LoanCo, LLC ("M2 LoanCo") engaged FTICA to render a "fairness opinion" on the proposed Divisional Merger. As outlined by the Debtor in the Declaration accompanying the February 17, 2023 filing in this case:

> To ensure that a divisional merger was a viable and fair path forward, on February 8, 2022, the Debtor engaged independent financial firm, FTI Capital Advisors, LLC ("FTI"), to render a fairness opinion on the proposed divisional merger. FTI conducted widescale due diligence, including a review and analysis of Corizon's financial history and contingent liabilities. Ultimately, the conclusion was reached that the proposed divisional merger provided Corizon's unsecured creditors with access to equal or greater value than not completing the merger, supported by, among other things, the availability of $15,000,000 from M2 LoanCo, LLC pursuant to a funding agreement (the "Funding Agreement"). FTI confirmed the fairness of the divisional merger in a May 1, 2022, fairness opinion sent to the Debtor's Board of Directors.

Debtor's Emergency Motion to Extend and Enforce the Automatic Stay [Case No. 23-90086, Dkt. No. 7], at p. 24.

3.     The Proposed Final DIP Financing Order contemplates the Debtor providing a full release of certain claims and the release specifically identifies "all claims relating to the Divisional Merger" in outlining the scope of such releases.  The proposal also provides for a dramatically accelerated Challenge Period.  The Final Hearing on this proposed DIP financing was scheduled for May 17, 2023.

4.     At some point in March 2023, the Debtor's counsel began engaging in discussions regarding informal document production with FTICA.  The Committee was not part of those

3

discussions in any way and only became aware of them after they had begun. The Committee was not invited to participated in those discussions.

5. During the pendency of those discussions, the Committee became aware that the terms of FTI's engagement letter with Corizon prohibit the Debtor from disclosing any communications with FTICA, work-product of FTICA, or even the fact that FTICA was engaged unless "required by law, regulation, legal proceeding, judicial or governmental order or similar legal process."[2]

6. After spending more than a month attempting to negotiate a narrow scope of production with the Debtor, FTICA finally produced documents to the Debtor on May 5, 2023. FTICA's production consisted of eight documents.

7. The Committee evaluated the foregoing and concluded that (a) due to the limitations imposed in FTI's engagement letter, anything short of a formal request would be ineffective in requiring the Debtor or FTICA to produce responsive documents; (b) that the dramatically narrowed scope of eight documents being provided to the Debtor would not be adequate to allow the Committee to conduct its investigation; and (c) FTICA was using the existence of ongoing negotiations strategically to delay production until after the Final DIP Hearing and, potentially, after the expiration of the Challenge Period. As a result, pursuant to Federal Rule of Civil Procedure 45 and in furtherance of the Committee's obligations to investigate potential claims that may be brought on behalf of the unsecured creditors of Tehum, the Committee filed a Subpoena to Produce Documents on FTICA on May 5, 2023. The

---

[2] In the portion of the Motion to Quash containing FTICA's baseless, knee-jerk attempt to impose monetary sanctions on the Committee and its Counsel, FTICA attempts to place emphasis on the fact that Counsel for the Committee did not engage in pre-issuance discussions with FTICA's counsel prior to issuing the Subpoena. Such discussions are obviously not required by any Federal or Bankruptcy Rule, but to the extent the Court determines this assertion to be relevant to the inquiry, the Committee notes that FTICA had made clear to the parties that it would object to any production of documents not required by law, rendering informal discussions with the Committee non-viable.

4

Committee served and filed a Corrected Notice of Service of Subpoena to FTICA on May 8, 2023 (the "Subpoena").

8. Because the date for the Final DIP Hearing was twelve days after the date of the filing of the Subpoena, the Committee identified May 12, 2023, seven days after the filing, as the response date.

9. Counsel for the Committee reached out directly to counsel for FTICA immediately upon service of the Subpoena on May 8, 2023, noting that because the parties are dealing with tight timelines in this case, the Committee was endeavoring to move forward with the discovery process in an expedited fashion. On May 11, 2023, counsel for the Committee and counsel for FTICA participated in a telephone conference to discuss the Subpoena and FTICA's purported objections.

10. During the telephone conference, counsel for the Committee reminded counsel for FTICA as to the exigencies at issue (*i.e.* the request for releases and the May 17 Hearing), but made clear that the Committee is willing to extend the deadline for FTICA to produce the documents requested in the Subpoena. Counsel for FTICA stated that extending the deadline would not address FTICA's various objections outlined in its written responses to the Subpoena and Motion to Quash.

11. Counsel for FTICA advised counsel for the Committee that despite the supposed ongoing negotiations with the Debtor, no effort whatsoever had been made to evaluate the potential volume of responsive documents and communications in FTICA's possession, custody, or control that would be considered responsive to the issues in this case or the Committee's documents requests. Instead, counsel for FTICA focused solely on the language of the document requests to conclude the requests impose an undue burden on FTICA.

5

12. On May 12, 2023, FTICA filed Motion to Quash in the Northern District of Texas, Dallas Division. The same day, FTICA refiled the Motion to Quash under seal. [Case No. 3:23-mc-00031-E-BN, Dkt. No. 1, 3].

13. On May 17, 2023, the Committee filed the Emergency Motion to Transfer Consideration of Subpoena-Related Motion Pursuant to Federal Rule of Civil Procedure 45(f) (the "Motion to Transfer"). The Motion to Transfer sought to transfer consideration of the Motion to Quash to the Southern District of Texas, Houston Division, to be referred to the Bankruptcy Court for the Southern District of Texas, Houston Division, pursuant to General Order 2012-6. *See* Motion to Transfer [Case No. 4:23-mc-00867, Dkt No. 4], at p. 1, 11-12.

14. On May 31, 2023, the Northern District of Texas Court granted the Committee's Motion to Transfer and directed the Clerk of the Court to transfer the Motion to Quash to the Southern District of Texas, Houston Division. Order Granting Motion to Transfer [Case No. 4:23-mc-00867, Dkt. No. 10]. Upon transfer, the Motion to Quash was assigned to District Judge Charles Eskridge of the Southern District of Texas, Houston Division.

15. On June 12, 2023, the Committee filed a Motion to Transfer Case to the United States Bankruptcy Court for the Southern District of Texas, Houston Division Pursuant to General Order 2012-6 (the "Second Motion to Transfer"). [Case No. 4:23-mc-00867, Dkt. No. 12].

16. On June 20, 2023, Judge Eskridge entered an Order granting the Second Motion to Transfer. [Case No. 4:23-mc-00867, Dkt. No. 13]. The Court ordered that, pursuant to General Order 2012-6, the "case shall be referred to Judge Christopher M. Lopez of the United States Bankruptcy Court for the Southern District of Texas, Houston Division." *Id.*

17. On June 21, 2023, the Committee filed a Motion to Compel FTI Capital Advisor's Compliance with Subpoena in the bankruptcy case [Case No. 23-90086, Dkt. No. 705].

### III. Argument and Authorities

18. Fed. R. Civ. P. 45 "explicitly contemplates the use of subpoenas in relation to non-parties." *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009).

19. In the Fifth Circuit, it is well-established that "modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004). As such, a subpoena must be quashed only if the subpoena (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3).

20. The fact that a subpoena is directed to a non-party may be relevant in determining whether it should be modified or quashed. However, "[t]ransparency and collaboration is essential to meaningful, cost-effective discovery." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 450 (N.D. Tex. 2015) (quoting *Apple, Inc. v. Samsung Electronics Co. Ltd.,* No. 12–CV–0630–LHK (PSG), 2013 WL 1942163, at *3 (N.D.Cal. May 9, 2013)). "[A] non-party's attempt to stand outside of these tenets because of its third-party status is unpersuasive." *Id.* "Although a non-party should not be required to 'subsidize' litigation to which it is not a party, the non-party cannot confuse undue burden with its obligations, once subject to a subpoena, to participate in transparent and collaborative discovery. *Third-party status does not confer a right to obfuscation or obstinacy*." *Id.* (internal quotations omitted) (emphasis added).

7

A. **The Committee Has Agreed to Extend the Deadline for FTICA to Produce the Requested Documents**

21. The Motion asks the Court to quash the Subpoena on two alternative bases: (a) FTICA's assertion that the Subpoena fails to allow a reasonable time for compliance under Rule 45(d)(3)(A)(i), and therefore no response is required; and (b) the Subpoena is unduly burdensome under Rule 45(d)(3)(A)(iv). *See* Motion to Quash, at p. 10.

22. However, as counsel for FTICA admits, the Committee is willing to extend the deadline for FTICA to produce the documents requested. Counsel for FTICA, however, has refused to provide an alternative deadline to comply with the Subpoena. FTICA's unwillingness to negotiate an amended deadline should not serve as a basis to quash the Subpoena.

B. **FTICA Offers No Evidence that Compliance with the Subpoena Would Impose an Undue Burden**

23. On a motion asserting undue burden, the moving party "must meet the heavy burden of establishing that compliance with the Subpoena would be unreasonable and oppressive." *Sec. & Exch. Comm'n v. Reynolds*, No. 3:08-CV-0438-B, 2016 WL 9306255, at *2 (N.D. Tex. Apr. 29, 2016); *see Andra Grp., LP,* 312 F.R.D. at 449. To meet its burden, "the moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Grp., LP*, 312 at 449.

24. To determine whether a subpoena presents an undue burden, courts may consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa*, 392 F.3d at 818.

8

>   *i.  The documents and communications requested are highly relevant and necessary to the Committee's ability to investigate potential claims on behalf of its members*

25. Each factor weighs against a finding of undue burden in this instance. The information the Committee has requested from FTICA is highly relevant to its ability to evaluate potential claims that may be brought on behalf of the unsecured creditors in these proceedings. FTICA's conclusions as to the fairness of the Divisional Merger laid the groundwork for the merger to take effect. Any and all information evaluated by FTICA to render that opinion, not just the final opinion presented to the Debtor, are therefore relevant to the Committee's ability to effectively advocate for its members. Additionally, due to the accelerated nature of the Chapter 11 process, the need of the Committee to obtain the requested documents is heightened.

>   *ii.  FTICA cannot properly base an objection on its unfounded claim that the documents requested are in possession of the Debtor or its affiliated companies*

26. Another specious argument outlined in the Motion to Quash is FTICA's nonsensical suggestion that it should be excused from compliance because FTICA asserts that the documents the Committee seeks are in the possession of the Debtor. This argument fails on at least four separate levels.

27. First, a plain reading of the requests makes clear that the vast majority of the documents sought would, in fact, by definition not be in the Debtor's possession. For example, the Subpoena seeks FTICA's internal documents and its communications with parties other than the Debtor. Given that counsel for the Committee pointed out the scope of these requests in the parties' meet-and-confer discussion, FTICA's position in its Motion to Quash cannot be seen as anything other than an international and disingenuous misreading of these requests. Second, it is or should be obvious that these documents are not, in fact, in the Debtor's possession. The Debtor has made numerous productions of documents to the Committee, and the Committee has

9

not received the documents it now seeks from FTICA. Third, FTI has already taken the position that no one in possession of documents that reveal even the *fact* of the FTICA's engagement for the Fairness Opinion may produce said documents absent a legal requirement to do so and without providing advance notice to FTICA and has threatened any such producing party with legal claims should they provide these documents to the Committee. This position obviously contradicts FTICA's argument that seeking documents via other means would be more effective or efficient. Finally, even if the foregoing were not the case, parties are not excused from their discovery obligations simply because documents being sought exist elsewhere. *See GMFS, LLC v. Cenlar FSB*, No. CV 18-582-BAJ-RLB, 2019 WL 5558568, at *8 (M.D. La. Oct. 28, 2019) ("[T]he Court cannot condone a discovery response that allows a responding party to condition its response on its unilateral determination of what documents another party may have in its possession, custody, or control.") This is especially true here, where the other parties whom FTICA claims may have some of the information being sought are the same parties seeking a broad release in connection with the Divisional Merger, placing them in decidedly different circumstances as a producing party that FTI.³

### iii. The requests are limited in time and scope by the nature of FTICA's engagement with Corizon and M2 LoanCo

28. Further, the requests are not overly broad in time. FTICA has represented that it was engaged by the Debtor's counsel to render the fairness opinion on or about February 8, 2022, and the Divisional Merger opinion was provided on May 1, 2022. FTICA could not identify any work it performed in connection with the Debtor or any of its affiliates outside of this three-month timeline.

---

³ As previously outlined in the Committee's pleadings and oral arguments before the Southern District of Texas Bankruptcy Court, multiple of these other parties are being less than forthcoming and responsive in their own discovery responses.

29. Thus, FTICA's objections as to timeline are not only questionable in substance, they represent an argument made in bad faith. FTICA is railing to the Court about the fact that the requests seek documents over a three-and-a-half-year period while knowing that FTICA does not have any responsive documents outside of a three-*month* period. *See* Motion to Quash, at p. 5. FTICA's arguments as to temporal scope fail to meet its burden and evidence the obstinacy and obfuscation at the heart of FTICA's opposition here.

30. The remainder of FTICA's rhetoric focuses on the scope of the requests. At the heart of these objections is FTICA's contention that the Subpoena "purports to require the production of a massive amount of documents." Motion to Quash, at p. 3.

31. FTICA also objects based on the scope of the requests, focusing on the fact that the Subpoena requests "all" documents relating to the specific topics outlined therein. But these objections reveal the fundamental dichotomy in FTICA's arguments. On one hand, FTICA argues that it should not be forced to participate in discovery in these proceedings because it is so far removed from the parties, facts and issues in dispute – FTICA calls its engagement "limited," highlights that the Fairness Opinion was its "sole nexus to these proceedings" and says the Fairness Opinion was "narrowly-drawn." Yet at the same time, FTICA claims that despite this "limited" engagement in time and scope, it would suffer an "enormous burden" to comply with the document requests. *See* Motion to Quash, at p. 5.

*32.* The factual circumstances around FTICA's engagement are fatal to its purported arguments of overbreadth. Each of the cases upon which the Motion relies for this point make clear that requests for "all" documents are permissible and reasonable where such a request is necessarily limited by context or circumstances. *See, e.g, Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, 2022 U.S. Dist. LEXIS 181827, *23-24 (S.D.N.Y.

2022) (Requests for "all" documents are not inappropriate where such requests encompass a discrete set of documents); *Treadway v. Otero*, 2020 U.S. Dist. LEXIS 21765, *9 (S.D. Tex. Feb. 7, 2020) (Rejecting request because it was not "tailor[ed] to the particulars of the case."). In fact, "[r]equests for 'all documents are not *per se* improper; rather, the appropriate inquiry is whether the documents sought are relevant and the burden of compliance is proportional to the needs of the case." *Certain Underwriters at Lloyd's v. Amtrak*, 2016 WL 6902140, at *6 (E.D.N.Y. Nov. 23, 2016) (finding "contrary to [the subpoenaed-party's] broad generalization, the propriety of a demand for 'all documents' must be assessed in light of the relevance of the specific category of documents sought."). FTICA focuses exclusively on the word "all" in the requests to the exclusion of the remainder of the request. While the requests do cover "all" documents, this phrase is limited to documents relating to parties FTICA had no dealings with outside of a 10-week engagement which was limited to the provision of a single opinion. There is no dispute that "all" documents relating to that engagement and that opinion are relevant and responsive in the context of the contested matter for which they are sought – bankruptcy proceedings that *require* an analysis of the propriety of that transaction and FTICA's opinion.

33. FTICA claims that the requests impose a "massive" burden on it, but its statements as to this supposed burden are false and are wholly unsupported.[4] FTICA has the burden to show that the requests impose an undue burden. *Andra Grp., LP*, 312 at 449. FTICA not only hasn't met this burden, it admits it has even attempted to. A party objecting based on

---

[4] Similarly, FTICA suggests, with *zero* support, that compliance with the Subpoena would somehow be particularly costly. In fact, FTICA has no idea as to the cost of compliance because it has done no investigation as to the scope of its data. To the extent such discussion is even relevant in absence of such evidence, the Committee submits that (a) FTICA's costs would go down significantly if it did not direct its Counsel to spend time on baseless objections and intentionally unproductive meet-and-confer discussions; and (b) any costs eventually borne by FTICA would likely pale in comparison to the nearly $300,000 FTICA received for two months' work on the "narrow" opinion which is its "sole nexus" to the proceedings.

burden must make a particularized showing as to the burden that would be associated with responding to the requests. *Sec. & Exch. Comm'n,* 2016 WL 9306255, at *2 ("Movants have failed to present specific evidence of the time or expense that would be involved in responding to the discovery request, as is required to establish undue burden."). FTICA admits it has not undergone *any* effort to determine the volume of responsive documents and communications. This failure to investigate the burden appears calculated, given that all available facts relating to the engagement suggest the actual burden associated with producing all documents relating to FTICA's "limited," "narrowly-focused" engagement would be fairly minimal.

34. FTICA has not made *any* showing, let alone a particularized showing, that compliance imposes an undue burden on FTICA such that the Subpoena should be quashed on this basis under Fed. R. Civ. P. 45(d)(3).

        **v.**       **The Court should overrule FTICA's ill-supported objections as to the Subpoena's ESI Protocol and Rule 2004**

35. A non-party is subject to the same requirements that govern discovery in federal courts. Namely, the non-party must state its objections to discovery with specificity and offer full explanation and support for the same. *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015). ("a non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections.").

36. FTICA also objects to the Committee's request that it produce documents in standard ESI format complete with relevant metadata. This objection, which appears to be based on yet another unsubstantiated and vague assertion of burden, is unfounded. The Federal Rules of Civil Procedure and relevant precedents require a party to produce documents with metadata

intact because such information is part and parcel of the document being sought. *See* Fed. R. Civ. P. 45(a)(1)(C) ("A subpoena may specify the form or forms in which electronically stored information is to be produced."); *Sexton v. Lecavalier*, 11 F. Supp. 3d 439, 442 (S.D.N.Y. 2014) (finding metadata contains a "significant amount of evidentiary value" and noting many courts recognize the "sufficiency of production methods that avoid the degradation or loss of valuable metadata."). For example, in the extraordinarily limited production of eight documents FTICA provided to the Debtor, FTICA appears to have removed the file names from the documents and/or otherwise modified them from their original state.

37.  Finally, as part of its kitchen-sink objection strategy, FTICA attempts to assert that the Subpoena is in violation of Rule 2004. As has already been explained to FTICA, this purported objection is a *non sequitur* – the Subpoena was served pursuant to Rule 9016 and Fed. R. Civ. P. 45 in connection with a contested matter. *In re Symington*, 209 B.R. 678, 688–89 (Bankr. D. Md. 1997) (due to the "broad scope" of Fed. R. Bankr. P. 9016, "Federal Rule of Civil Procedure 45 … applies in adversary proceedings, contested matters, contested or involuntary petitions … *and all other matters in a bankruptcy case in which testimony may be compelled*.") (quoting 10 Collier on Bankruptcy ¶ 9016.01 (15th ed. rev.1996)) (emphasis in original).

38.  In the Bankruptcy Case, Corizon and its principals are seeking broad releases in a pending dispute over DIP Financing, and as the Committee explained repeatedly to FTICA, the Subpoena, its scope, and the accelerated timeline for response are all being done in connection with that contested matter.

### C. There is No Basis to Impose Sanctions in the Form of Attorneys' Fees and Costs Against the Committee and Stinson LLP

39. Perhaps the best illustration of the fact that the Motion to Quash relies on bluster and bombast rather than anything resembling substance is FTICA's galling request for sanctions. FTICA asks the Court not only to excuse it entirely of its Rule 45 obligations, but to also impose a punitive penalty on the Committee (and, in doing so, all unsecured creditors) for performing its statutory duties and seeking documents and information from a key player to the investigation it is duty-bound to perform. As FTICA and its counsel are well-aware, the Committee *must* perform an investigation in order to evaluate potential claims, and in the current circumstance, the terms of the proposed DIP financing dictate that this investigation be performed as quickly as possible.

40. Fed. R. Civ. P. 45(d)(1) "does not require that the Court impose sanctions any time that it modifies or quashes a subpoena as overbroad or imposing some undue burden." *Am. Fed'n of Musicians,* 313 F.R.D. at 58. Instead, a party may only be awarded its reasonable attorneys' fees when the party issuing the subpoena "failed to take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

41. The position taken by FTICA during the parties' telephone conference and in the Motion appears to be that it is an unreasonable burden to ask a responding party to do anything in response to a Rule 45 subpoena. FTICA is asking this Court to impose sanctions in the form of attorneys' fees incurred in asserting boilerplate objections to the Committee's subpoena, drafting a frivolous motion, and bloviating about unsupportable objections on a call solely to meet local rule obligations rather than engaging in productive discussion.

42. The fact that FTICA negotiated an informal, narrow scope of production with the Debtor is irrelevant. In fact, it only serves to highlight the Committee's need for its own subpoena. FTICA apparently conflates advocacy on behalf of the committee members with bad faith. *See* Motion to Quash, at p. 8. FTICA's attempt to restrain the Committee's ability to seek relevant documents to those negotiated outside the presence of the Committee and with a separate party is not only absurd, but does not provide the Court with any basis to impose sanctions against the Committee or Stinson.

### D. FTICA's Request for Fees and Expenses for Producing Documents Should Be Denied in its Entirety

43. To the extent FTICA requests the Court award the company its fees and expenses incurred in producing documents responsive to the Subpoena outside of its request for sanctions, this unsupported request should similarly be denied. *See* Motion to Quash, at p. 9. "[T]he cost of complying with a subpoena is generally considered part of the public duty of providing evidence, district courts across the country routinely hold that a non-party is required to pay its own costs for complying with a Rule 45 subpoena, especially when those costs are minimal." *Shields v. Eleveated Energy Sols., LLC,* No. 3:19-CV-00390, 2020 WL 5658499, at *2–3 (S.D. Tex. Sept. 23, 2020) (collecting cases). By nature of the Federal Rules, "our judicial system has, in effect, concluded that a non-party must assume some costs if our justice system is to work efficiently and effectively … [o]nly when the cost of compliance is significant, or a litigant has failed to take steps to avoid undue burden or expense on a non-party may cost-shifting be appropriate." *Id.* at *4 (internal citations omitted).

44. As described, FTICA has not put forward any evidence to support its contention that compliance with the Subpoena would subject it to significant expense. In fact, FTICA cannot do so because it has not undertaken any investigation to estimate what the costs

associated with production would be. The Court should not allow FTICA to rely on its status as a "non-party" to shield itself from the cooperation plainly required of the company under the Federal Rules.

### IV.    Conclusion

45.     FITCA has not met its burden to quash the Committee's properly-served subpoena on any basis under Fed. R. Civ. P. 45(d)(3)(A). The Subpoena seeks highly-relevant documents and communications that are necessary for the Committee to properly investigate potential claims that may be brought on behalf of its members. FTICA has not provided the Court with any shred of evidence supporting its inflated claims that the Subpoena imposes an undue burden on the company. Further, the Committee has agreed to extend the deadline for FTICA to produce documents, and as such, the Motion to Quash on this basis should also be denied. Additionally, FTICA's misguided request for sanctions against Stinson and the Committee should be summarily denied.

**WHEREFORE,** the Committee respectfully requests the Court overrule FTICA's Motion seeking to quash the Subpoena and impose sanctions on Stinson and the Committee in the form of fees and expenses associated with objecting to the Subpoena, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

      STINSON LLP

By: */s/ Paul B. Lackey*_____
Paul B. Lackey
(TX Bar No. 00791061)
2200 Ross Avenue, Suite 2900
Dallas, TX 75201
Telephone (214) 560-2201
paul.lackey@stinson.com

Edwin Caldie
Phillip Ashfield
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
ed.caldie@stinson.com
phillip.ashfield@stinson.com

Nicholas Zluticky
Michael Pappas
Zachary Hemenway
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone:  (816) 842-8600
nicholas.zluticky@stinson.com
michael.pappas@stinson
Zachary.hemenway@stinson.com

Clarissa Brady
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
clarissa.brady@stinson.com

*COUNSEL FOR THE COMMITTEE*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 7, 2023 the foregoing document was electronically filed with the court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF System.

*/s/ Paul B. Lackey*
Paul B. Lackey
Counsel for the Committee