IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Subpoena issued by Tehum | § | Misc. Case No. 23-00529 |
| Creditors' Committee | § | |
| | § | |

---

**REPLY IN SUPPORT OF MOTION AND SUPPORTING MEMORANDUM OF LAW OF FTI CAPITAL ADVISORS, LLC TO QUASH SUBPOENA AND FOR RECOVERY OF RELATED FEES AND EXPENSES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45(d)(1)**

---

**COMES NOW,** FTI Capital Advisors, LLC ("FTICA"), by and through its undersigned counsel, and files this reply in support of its motion (the "Motion to Quash")[1] for an Order (i) quashing a subpoena (the "Subpoena") served by Stinson LLP ("Stinson") on behalf of the official committee of unsecured creditors (the "Committee") of Tehum Care Services, Inc. ("Tehum") and (ii) awarding FTICA fees and expenses for responding to the Subpoena and the preparation, filing and prosecution of the Motion to Quash.  In support thereof, FTICA respectfully states as follows:

## I.      Preliminary Statement

1.      The Committee has established a practice of serving broad and duplicative subpoenas on third parties in which the Committee demands the production of documents—in *one to three* business days.  The Committee then accuses the third parties of "rush[ing] into court" even though the Federal Rules of Civil Procedure require the subpoenaed parties to object to the

---

[1] On May 12, 2023, FTICA filed a *Motion And Supporting Memorandum Of Law Of FTI Capital Advisors, LLC To Quash Subpoena And For Recovery Of Related Fees And Expenses Pursuant To Federal Rule Of Civil Procedure 45(d)(1)* [Dkt. No. 1].

subpoenas before the outrageously short response deadline and to "timely" file a motion to quash.[2]

Using its bad faith response deadline as a bargaining chip, the Committee then offers to extend the response deadline provided that the third parties agree to produce everything requested in the subpoenas without modification of any sort.  Such conduct flouts the Committee's duties under Rule 45(d)(1) of the Federal Rules of Civil Procedure, which instructs that "[a] party or attorney responsible for issuing and serving a subpoena *must take reasonable steps to avoid imposing undue burden or expense* on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include . . . reasonable attorney's fees—on a party or attorney who fails to comply."  Here, the Committee failed to take any reasonable steps to avoid undue burden or expense.  Indeed, the Committee has taken steps to impose undue burden and expense.

2.      In addition to the arguments set forth in the Motion to Quash, FTICA also asserts that the subpoena is overly broad and unduly burdensome because it seeks the ***duplicate*** production of documents produced by White & Case LLP ("W&C") and by M2 LoanCo, LLC ("M2"). Seeking the duplicate production of documents is yet another element of the subpoena that renders it unduly burdensome.

3.      Since filing the Motion to Quash in short order (as required by the outrageous timeline for production), FTICA has determined that it will cost approximately $75,000 for the review and production of documents in response to the subpoena.  *See* **Exhibit 1**, *Declaration of*

---

[2] Written objections to a subpoena must be served "before . . . the time for compliance."  Fed. R. Civ. P. 45(d)(2)(B).  "Either in lieu of or in addition to serving objections on the party seeking discovery, a person can 'timely' file a motion to quash or modify the subpoena" under Federal Rule of Civil Procedure 45(d)(3)(A).  *In re Ex Parte Application of Grupo Mexico SAB de CV for an Order to Obtain Discovery for Use in a Foreign Proceeding*, No. 3:14-mc-73-G, 2015 WL 12916415, at *3 (N.D. Tex. Mar. 10, 2015), *aff'd sub nom. Grupo Mexico SAB de CV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016).

*Mark W. Eckard, Esquire Pursuant To 28 U.S.C. § 1746(2)*, at ¶ 3.  To the extent the subpoena is not quashed (and it should be), the Committee (or the estate) should have to pay the cost of any such production.

## II.    Reply

### A.    The Committee's Practice of Serving Subpoenas with an Unreasonable Production Time as a Negotiation Tactic Is Bad Faith.

4.      The Committee's assertion that FTICA's "obstinance" (Comm. Brief, p. 1) somehow caused the Committee to serve a subpoena with a three-business-day document production deadline is demonstrably false.  The Committee has shown the same disregard for its duty to avoid imposing undue burden on all subpoenaed parties—***serving multiple subpoenas requiring document production in one to three business days***.  *See, e.g.,* Subpoena, attached as Exhibit A to *The Official Committee Of Unsecured Creditors' Motion To Compel M2 LoanCo LLC's Compliance With Subpoena* (Dkt. No. 630) (subpoena issued on March 28th and requiring production one business day later on March 30th at 9:00 a.m.); *Non-Party Flacks Group LLC's Motion To Quash June 23, 2023 Subpoena Issued By The Official Committee Of Unsecured Creditors And Served June 28, 2023 And Compelling Compliance More Than 100 Miles From Place Of Business And For Compliance On 2 Business Days' Notice On July 3, 2023* at p. 3 ("The Subpoena commands compliance by July 3, 2023 at 9:00 a.m. central time, less than two 2 business days' notice."); Subpoena, attached as Exhibit A to *The Official Committee Of Unsecured Creditors' Motion To Compel Geneva Consulting, LLC's Compliance With Subpoena* (Dkt. No. 668) (subpoena served on April 20th and requiring document production three business days later on April 26th at 9:00 a.m.).

5.      As the foregoing plainly demonstrates, the Committee's modus operandi is to serve subpoenas with unachievable, outrageously short deadlines for the production of documents and

then propose to give the subpoenaed party more time in exchange for the subpoenaed party agreeing to produce all requested documents.  Comm. Brief, p. 2.

6.       Of course, FTICA declined the Committee's only offer—full production of all requested documents (regardless of burden and duplication)—in exchange for a reasonable time to produce documents.  Using a patently unreasonable response time as a negotiation tool is contrary to the Committee's obligation under Rule 45 to avoid imposing an unreasonable burden on a subpoenaed party.  Nothing in the Federal Rules of Civil Procedure authorizes a party to use an outrageous response deadline as a negotiation tool.  The Court should not countenance such abusive conduct.

**B.      The Estate Already Has All or Nearly All of the Documents that the Debtor Requested from FTICA**

7.       In discussions with counsel for Tehum, FTICA agreed (informally and provided that it did not have to incur the expense of dealing with a formal subpoena from the Debtor or the Committee) that it would produce the eight documents upon which FTICA relied (as such documents were listed in the Opinion) ***and*** all emails between FTICA, on the one hand, and either or both of W&C and Corizon Health, Inc., on the other hand, that relate to the opinion from the date of FTICA's retention on February 8, 2002 through May 1, 2002 (the date of the signed opinion letter).[3]  FTICA produced the eight documents upon which it relied (as set forth in the opinion) and was about to commence the gathering and production of the responsive emails when the Committee emerged from the shadows and served the subpoena on FTICA.  The Committee knew about the negotiations between the Debtor and FTICA and the scope of the agreed production.

---

[3] The Committee knew that FTICA was going to produce the agreed-upon emails but tries to mislead the Court by making the false inference that FTI had agreed to produce only eight documents.  *See* Committee Brief, ¶¶ 6-7.

The Committee, however, tried to serve a subpoena in bad faith after it thought that FTICA had completed an informal, agreed-upon production.  Because the Committee chose to lurk in the shadows before springing its subpoena on FTICA, the Committee chose to provide FTICA only three business days to respond to the document requests.

8.    In any event, the Debtor and the Committee now have W&C's files, which include all communications between W&C and FTICA.  Of course, as FTICA stated in its opening brief in support of its motion to quash, the Committee should have started its document requests by seeking documents from the Debtor's counsel (and the Debtor's affiliates) rather than burdening third parties.

**C.    The Committee's Subpoena Is Unduly Burdensome and Duplicative.**

9.    For the reasons discussed in detail in FTICA's Motion to Quash, the subpoena is unduly burdensome.  Based on work that FTICA and Reed Smith LLP have done to quantify the financial burden since filing the Motion to Quash, the cost to review and produce documents requested by the Committee would likely be $75,000.  The Debtor's lack of access to its own servers is not a basis to impose upon FTICA the financial burden of gathering and producing documents.[4]

10.    There is no reason to impose such a financial burden on a third party as opposed to the estate.  *See* Fed. R. Civ. P. 45(d)(2)(B)(ii) ("A court order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."); Fed. R. Civ. P. 45, Advisory Committee Note of 1991 ("A non-party required to produce documents or

---

[4] The Subpoena primarily seeks the production of documents relating to transactions by and among "Merger Parties," which are defined to include Tehum's *direct parent* (Valitas Health Services, Inc.) and Tehum's *wholly-owned subsidiaries* (Corizon, LLC, Corizon Health of New Jersey, and M2 LoanCo, LLC). The Subpoena also seeks communications between the Debtor and its own counsel, W&C.

materials is protected against significant expense resulting from involuntary assistance to the court."); see *Mesabi Metallics Co. v. Cleveland-Cliffs*, 2022 Bankr. LEXIS 1450, *5-6 (Bankr. D. Del. May 23, 2022).

11.     Imposing the financial burden on FTICA is particularly burdensome when the Committee—contrary to its obligation not to impose an undue burden on FTICA—seeks *duplicative* discovery from FTICA, W&C and M2 (among others).

12.     As indicated above, the Committee already has obtained documents from W&C and M2.  Requiring the production of communications between FTICA, on one hand, and W&C or M2, on the other hand, would be needlessly duplicative.

13.     For the foregoing reasons, and the reasons set forth in the Motion to Quash, the Committee deliberately and by design violated its *obligation* to avoid imposing undue burden or expense on FTICA.  Instead, the Committee and Stinson actually have taken steps *to impose* undue burden and expense on FTICA.

14.     Having forced FTICA to object to the subpoena and file a Motion to Quash, the Committee and Stinson cannot simply use the unreasonable response time as a bargaining chip.  Thus, the Court should quash the subpoena.

**D.     The Court Should Award Fees to FTICA**

15.     Here, Stinson and the Committee have repeatedly and unapologetically flouted their obligations under Rule 45 not to impose an undue burden upon subpoenaed parties.  Instead, Stinson and the Committee use the imposition of an undue burden as a bargaining chip, offering to give a subpoenaed party a reasonable time to produce documents if the subpoenaed party agrees to produce everything (regardless of burden or duplication) requested by Stinson and the Committee.

16.     Rule 45(d)(1) *requires* that a Court enforce a party's duty to avoid imposing undue burden or expense on a person subject to a subpoena and impose an "appropriate sanction" for the failure to uphold that duty.  Specifically, Rule 45 provides that "[t]he court for the district where compliance is required *must enforce this duty and impose an appropriate sanction* — which may include . . . reasonable attorney's fees —on a party or attorney who fails to comply."  Fed. R. Civ. P. 45(d)(1).

17.     For the foregoing reasons, FTICA respectfully requests that the Court, as required by Rule 45(d)(1), impose an "appropriate sanction" on the Committee and Stinson, including the payment of FTICA's fees and expenses incurred in responding to the Subpoena and in preparing, filing and prosecuting the Motion to Quash.  As such fees and expenses continue to accrue, FTICA respectfully requests that the Court schedule a hearing to determine the amount of such fees and expenses after this Motion to Quash has been heard.[5]

**WHEREFORE,** FTICA prays that the Court (i) quash the Subpoena, (ii) require Stinson and the Committee to pay FTICA's fees and expenses associated with objecting to the Subpoena

---

[5] To the extent that the Subpoena is not quashed in its entirety, the Court should award FTICA the costs and expenses of compliance with any required production.  *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).

and in relation to the Motion to Quash, as set forth in the proposed Order, and (iii) grant such further relief to FTICA as is appropriate.

Respectfully submitted,

Dated: July 14, 2023

By: */s/ Paul D. Moak*
Paul D. Moak
Daniela Mondragón
**REED SMITH LLP**
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: (713) 469-3800
Facsimile:  (713) 469-3899
E-mail:  pmoak@reedsmith.com
E-mail:  dmondragon@reedsmith.com

and

Kurt F. Gwynne (admitted *pro hac vice*)
**REED SMITH LLP**
1201 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: kgwynne@reedsmith.com

***Counsel for FTI Capital Advisors, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served upon counsel for the Official Committee of Unsecured Creditors on this 14th day of July 2023.


<u>/s/ *Paul D. Moak*</u>
Paul D. Moak